IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:07-CT-3001-H

MICHAEL RANKINS, )
)
    Plaintiff, )
)
v. ) **ORDER**
)
ROBERT SMITH, et al., )
)
    Defendants. )

Michael Rankins, a state inmate, filed this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. Defendants Glen Williams ("Williams") and Robert Smith ("Smith") have filed motions for summary judgment (D.E.'s 30, 35), Williams filed supplemental motion to address issues raised in Plaintiff's supplemental complaint (D.E. 47). Plaintiff has responded (D.E. 53). Also, before the court are Plaintiff's motions for appointment of counsel (D.E. 39, 45); motion for joinder (D.E. 40); motion for extension of time (D.E. 43); and motion for a physical exam (D.E. 44). These matters are ripe for disposition.

## STATEMENT OF FACTS

Plaintiff alleges that in September and October 2006, Williams, a physician's assistant, failed to provide him with medical treatment for his lung cancer. Plaintiff also alleges that Smith, Correctional Administrator at Maury Correctional Institution ("Maury"), knew that Plaintiff was not receiving proper medical treatment and failed to take any corrective action.

In his complaint, Plaintiff specifically states that Williams saw him on September 12, 2006 and looked at his medical records which allegedly indicate that Plaintiff has lung cancer. He claims Williams failed to treat him. He further claims that he was seen by Williams again on October 26,

2006, complaining that he was experiencing breathing problems, intense pain in his chest, intense bone pain in his legs, weakness in his legs, excessive coughing and coughing up bloody rust-colored phlegm. Plaintiff again claims that Williams failed to provide medical treatment. In his complaint, Plaintiff also claims that Smith learned that he was not being provided medical treatment but failed to take any action.

Plaintiff would have been barred from filing suit under 28 U.S.C. § 1915(g), having previously filed three or more lawsuit that were found frivolous. However, he was allowed to proceed with his claims because his allegation that he was not being treated for lung cancer placed him in the exception - - -that he potentially is in imminent danger of serious physical injury. See 28 U.S.C. § 1915(g).

Respondents contend that Plaintiff's claims should be dismissed because he had not been diagnosed with cancer when he filed his complaint, and because they were not deliberately indifferent to his serious medical needs.

**LEGAL STANDARD**

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R.

2

Civ. P. 56(e)). A mere scintilla of evidence supporting the case is not enough. Anderson, 477 U.S. at 252. The court construes the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor. Matsushita Elec. Indus. Co., 475 U.S. at 587.

**DISCUSSION**

**Original Complaint**

The deliberate indifference to an inmate's serious illness or injury by prison medical staff, violates the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). "To establish that health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Deliberate indifference can be demonstrated by a showing of actual intent or reckless disregard. Id. "A defendant acts recklessly by disregarding a substantial risk of danger that is either known to defendant or which would have been apparent to a reasonable person in the defendant's position." Id. at 851-52. However, a prisoner's disagreement with medical personnel over the course of his or her treatment is not actionable under 42 U.S.C. § 1983. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Plaintiff filed this action on January 9, 2007, alleging that on September 12, 2006, Williams told him he had lung cancer, after reviewing his medical records, but failed to treat him. Plaintiff's medical records show that he received a medical screening when he arrived at Maury on August 12, 2006. The medical records showed that Plaintiff has a history of hypertension, headaches, and stomach problems. According to Williams, he treated Plaintiff for the first time on September 12,

3

2006. Plaintiff complained of chronic right flank pain that increased with movement and burned. Williams noted that Plaintiff has a history of gastro-esophageal reflux disease ("GERD"). Upon examination, Williams assessed chest wall pain. He states that he educated Plaintiff about his condition and advised him to stop smoking, because this exacerbated his high blood pressure, GERD, and could cause chest pains. Williams prescribed medication for the GERD, and Tylenol as needed for the pain. Williams also ordered a urine sample. The urine results were negative. Williams' notes were reviewed by a physician, who agreed that the suggested treatment was appropriate.

On October 26, 2006, Plaintiff came to the medical clinic complaining that he was experiencing shortness of breath all the time. When Williams examined Plaintiff he found his respiratory rate normal and his oxygen saturation rate was 100%. Williams found that Plaintiff's carotid arteries were without apparent abnormalities, his heart had normal sinus rhythm and he had a wheeze. Williams assessment was possible chronic obstructive pulmonary disease ("COPD"), related to smoking, high blood pressure, and left ventricular hypertrophy ("LHV"), which results from high blood pressure. Williams noted that Plaintiff had undergone a echocardiogram stress test on February 23, 2005, which was negative. Williams again informed Plaintiff about the consequences of smoking. Williams submitted a request to the Utilization Review Board ("URB") for a pulmonary function test. As part of his plan for treating Plaintiff, Williams wanted to measure Plaintiff's Peek Flow or the amount of air traveling out of his lungs, and prescribe an Albuterol inhalator. Williams' treatment plan was reviewed and approved by a physician.

Plaintiff was seen by a nurse on November 1, 2006, at which time he requested a test for lung cancer. Medical records show that Plaintiff had a prior negative chest x-ray on August 13, 2003.

However, Plaintiff was not seen again by Williams until November 9, 2006. At this meeting, Plaintiff requested an MRI because he was experiencing shortness of breath, but he denied having a cough. After examining Plaintiff, Williams concluded that Plaintiff had a questionable diagnosis of COPD and he noted that the URB was pending for a pulmonary function test and consult. Williams noted that Plaintiff had a history of left ventricular hypertrophy. Williams prescribed an Atrovent inhalator, ordered an x-ray, and reiterated the harm caused by smoking. Williams' treatment plan was reviewed and approved by a physician.

The medical records show that Plaintiff received a chest x-ray on November 14, 2006, the results of which were normal. He received a health screening on November 20, 2006, at which time he indicated he was being treated for high blood pressure and emphysema. Plaintiff also had a Pulmonary Function Test on November 20, 2006.

On November 27, 2006, in reviewing Plaintiff's chart, Williams noted that the pulmonary function results showed no significant improvement in "forced vital capacity of forced expiratory volume with medication, when compared to results without medication." He referred Plaintiff's chart to Dr. DeVaul for review. Dr. DeVaul reviewed the chart and noted that the overall results of the pulmonary function test was good. The doctor recommended encouraging Plaintiff to not smoke, clinically monitoring him and continuing with the Atrovent inhaler.

On November 30, 2006, Plaintiff was seen in the clinic by Williams. The results of the pulmonary function test was discussed. Plaintiff informed Williams that he was taking nitroglycerin, which helped alleviate his chest pains. Williams examined Plaintiff and noted that his respiration rate and his oxygen saturation rate were normal. Williams assessment included ruling out angina, educating Plaintiff regarding his smoking, and submitting a request to URB for a cardiology consult.

5

A physician reviewed Williams notes and agreed with the treatment suggested.

On December 5, 2006, Williams reviewed Plaintiff's chart after he was seen in the clinic by the triage nurse. Plaintiff was complaining of coughing up "bloody rust colored phlegm." Williams' plan was to order a routine sputum test.

On December 13, 2006, Plaintiff came to the medical clinic after claiming the day before that he was told he had lung cancer. Williams denied that he told Plaintiff he had lung cancer during his clinic evaluation and pointed out that there was no such notation made in the chart. Williams further informed Plaintiff that he had not been diagnosed with lung cancer.

On December 18, 2006, Williams reviewed Plaintiff's medical chart. He noted that Plaintiff refused doctor's orders to take Claritin. The doctor reviewed Williams note and agreed with them.

On January 9, 2007, the same day Plaintiff filed this action, Williams reviewed his chart. He noted that Plaintiff had filed a sick call request on January 3, 2007, in which he complained about a history of headaches. Williams noted that Plaintiff's headaches could be a migraine variant or the side effect of nitrates. Williams assessed that there would be no change in Plaintiff's treatment. Williams noted that in response to his request for a cardiology consult, the URB stated that the unit doctor was to evaluate Plaintiff.

The record shows that Plaintiff had not been diagnosed with cancer when he filed this complaint. It is clear from the medical records that Plaintiff was seen by Williams on numerous occasions for various complaints. Plaintiff cannot rely on self-diagnosis, by comparing his symptoms with those found in articles, to support a claim of deliberate indifference to a serious medical need. He must provide documentation from his own medical records to show that a diagnosis of cancer was made. Further, it is evident from Plaintiff's medical records that Williams

6

Case 5:07-ct-03001-H   Document 58   Filed 08/07/08   Page 6 of 10

A physician reviewed Williams notes and agreed with the treatment suggested.

On December 5, 2006, Williams reviewed Plaintiff's chart after he was seen in the clinic by the triage nurse. Plaintiff was complaining of coughing up "bloody rust colored phlegm." Williams' plan was to order a routine sputum test.

On December 13, 2006, Plaintiff came to the medical clinic after claiming the day before that he was told he had lung cancer. Williams denied that he told Plaintiff he had lung cancer during his clinic evaluation and pointed out that there was no such notation made in the chart. Williams further informed Plaintiff that he had not been diagnosed with lung cancer.

On December 18, 2006, Williams reviewed Plaintiff's medical chart. He noted that Plaintiff refused doctor's orders to take Claritin. The doctor reviewed Williams note and agreed with them.

On January 9, 2007, the same day Plaintiff filed this action, Williams reviewed his chart. He noted that Plaintiff had filed a sick call request on January 3, 2007, in which he complained about a history of headaches. Williams noted that Plaintiff's headaches could be a migraine variant or the side effect of nitrates. Williams assessed that there would be no change in Plaintiff's treatment. Williams noted that in response to his request for a cardiology consult, the URB stated that the unit doctor was to evaluate Plaintiff.

The record shows that Plaintiff had not been diagnosed with cancer when he filed this complaint. It is clear from the medical records that Plaintiff was seen by Williams on numerous occasions for various complaints. Plaintiff cannot rely on self-diagnosis, by comparing his symptoms with those found in articles, to support a claim of deliberate indifference to a serious medical need. He must provide documentation from his own medical records to show that a diagnosis of cancer was made. Further, it is evident from Plaintiff's medical records that Williams

treated him for the ailments that were diagnosed by prescribing medication or by requesting additional tests. In his response, Plaintiff states that in September Williams failed to refer him to a facility outside the prison; and on November 10, 2006, Williams did not order a "computed tomography" Plaintiff requested. On every occasion referred to in his response, Plaintiff was examined by Williams. Merely because Williams disagrees with the treatment Plaintiff seeks does not show that he was deliberately indifferent. Plaintiff has failed to establish that Williams was deliberately indifferent to his serious medical needs. Therefore, Plaintiff's claims against Williams are DISMISSED.

Plaintiff's claim that Smith, in his supervisory capacity, was deliberately indifferent is also without merit. Supervisory liability requires a showing that the supervisory official failed to promptly provide an inmate with needed medical care, deliberately interfered with the prison doctor's performance, tacitly authorized or were indifferent to a prison physician's constitutional violations. Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990). In this case, the medical records support a conclusion that Williams was not deliberately indifferent to Plaintiff's serious medical needs. Moreover, Smith is entitled to rely on the medical judgments made by prison medical personnel. For these reasons, Plaintiff's claims against Smith are DISMISSED.

**Supplemental Complaint**

In his supplemental complaint, Plaintiff claims that on July 31, 2007, Williams told him he was going to make him suffer for filing this civil action. He claims that Williams then took him off all three inhalers that were prescribed for his asthma and did not provide any other treatment. Plaintiff further alleges that in August, September, and October 2007 he had numerous asthma attacks and was unable to breath, but could not receive treatment because of Williams' retaliation.

7

Plaintiff claims that Smith failed to take any action on August 27, 2007, in response to his grievance concerning this matter.

Plaintiff claims that Smith retaliated by failing to put his name on the Ramadan list for the Muslim Holy month. He further states that Smith retaliated by not allowing him to receive foods from the "eid-ul-fitr" feast in August and September 2007.

Plaintiff's claim that Williams withheld his inhalers is without merit. Williams states that when he examined Plaintiff on July 31, 2007, he noted that Plaintiff had an unproven diagnosis of asthma. Williams also noted that Plaintiff denied smoking and had no complaints of wheezing or shortness of breath. After examining Plaintiff, Williams made the following assessment:

> 1) atypical chest pain with a negative Adenosine stress study, 2) no EKG evidence of ischemia, 3) hypertension, 4) normal pulmonary function studies with history of complaint of dyspnea, 5) smoker (inmate Rankins was educated and counseled to stop smoking again on this date), and 6) rebound headache (not a classical migraine) with the possibility that several of the medications that inmate Rankins was currently taking could cause the headache.

Williams Supplemental Aff., ¶ 7. Based on his assessment, Williams concluded that Plaintiff needed a "drug holiday." Id. Therefore, Williams plan called for discontinuing all the asthma related medicines, except Albuterol. However, the Albuterol was made available to Plaintiff "only if he was actively wheezing with O2 stats below 95% then only under D.O.T. (Direct observed therapy) at two puffs as needed every four hours." Id. Plaintiff was also allowed Tylenol and antacids. Williams' plan was reviewed and approved by the physician.

Even if, as Plaintiff suggests, Williams did discontinue all his inhalers. His claim merely amounts to a disagreement with Williams concerning the course of his treatment. Plaintiff states that he suffered numerous asthma attacks in August, September, and October of 2007, but these unsupported statements are insufficient to provide a basis for Plaintiff's claim. See White v. White,

8

Case 5:07-ct-03001-H    Document 58    Filed 08/07/08    Page 8 of 10

886 F.2d 721, 723 (4th Cir. 1989). Not only has he failed to document the alleged asthma attacks after the medication was discontinued, he has failed to provide documentation that he indeed suffers from asthma. Accordingly, to the extent Plaintiff is claiming deliberate indifference against Williams in his supplemental complaint, this claim is DISMISSED.

To the extent Plaintiff is claiming that Smith failed to taking any action in light of Williams' alleged deliberately indifferent, for the reasons previously stated, Plaintiff's claims against Smith in his supplemental complaint are without merit and are DISMISSED.

Finally, Plaintiff claims that Williams and Smith retaliated against him for filing this lawsuit. Retaliation against a prisoner for exercise of his right of access to courts states a claim. See Hudspeth v. Figgins, 584 F.2d 1345, 1348 (4th Cir. 1978). However, Plaintiff's claims of retaliation are merely conclusory. First, as shown above, Williams' treatment of Plaintiff by discontinuing some of the numerous medications was based on his medical judgment after considering Plaintiff's medical records and his personal knowledge of Plaintiff's medical history. There is no support for a conclusion that this decision was based on some retaliatory animus. In addition, Plaintiff's claim is defeated because he has failed to show that Williams' alleged retaliation had an adverse impact on the exercise of his constitutional rights. See American Civil Liberties Union v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993).

Defendant Smith contends that Plaintiff's claim concerning the denial of his right of free exercise of his Muslim religion should be dismissed due to Plaintiff's failure to exhaust this claim. Under the Prison Litigation Reform Act ("PLRA"), inmates are required to exhaust available administrative remedies prior to filing an action in the federal courts. See 42 U.S.C. § 1997e(a). Exhaustion is mandatory under the PLRA. Woodford v. Ngo, 548 U.S. 81, 85 (2006); Porter v.

9

Nussle, 534 U.S. 16, 524 (2002). To exhaust administrative remedies, the PLRA requires "[c]ompliance with prison grievance procedures." See Jones v. Bock, 127 S. Ct. 910, 919 (2007). A review of the record before the court supports Smith's claim that Plaintiff has failed to exhaust his administrative remedies with regard to his religious freedom claim. Accordingly, this claim is DISMISSED without prejudice. However, if Plaintiff files a new complaint raising this claim, it is subject to review pursuant to 28 U.S.C. § 1915(g).

In addition, Plaintiff is cautioned that any future attempt to deceive the court by alleging unsupported facts to meet the "imminent danger of serious physical injury" requirement of §1915(g), will subject him to sanctions, including, but not limited to a pre-filing injunction, pursuant to Rule 11 of the Federal Rules of Civil Procedure.

## CONCLUSION

In conclusion, Plaintiff fails to provide facts to demonstrate the existence of a genuine issue of material fact as to either his claims in his original and supplemental complaints that Williams and Smith were deliberately indifferent to his serious medical needs; or his claim that Williams retaliated by withholding his medication and that Smith retaliated by failing to take any action. Therefore, these claims are DISMISSED. Further, Plaintiff failed to exhaust his administrative remedies as to his claim that Smith retaliated by denying his right to practice his religion and this claim is DISMISSED without prejudice. For these reasons, Defendants motions for summary judgment are GRANTED and this action is DISMISSED. All other pending motions are DENIED.

SO ORDERED this 7th day of August 2008.

MALCOLM J. HOWARD
Senior United States District Judge

nem